HAWLEY BRADLEY *vs.* PATRICK CUNNINGHAM AND ANOTHER.

New Haven & Fairfield Cos., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

*B*, who kept a livery stable, received from *C*, for storage and safe-keeping, a hearse belonging to the latter, and placed it in his livery stable. There was no definite agreement that it should be kept there, but both parties at the time expected that it would be. *B* had a barn, in connection with his house, about half a mile from the stable, where he kept horses, and to which he sometimes removed his patrons' vehicles from the stable, and about three months after he received the hearse he removed it from the barn to the barn, and it was there soon after burned with the barn. This place was no more exposed to fire than the livery stable, but *C* had insured the hearse as being at the stable, and did not know of its removal to the barn, and *B* did not know of the insurance. Held—

1. That *B* could be held responsible only for the want of ordinary care in the safe-keeping of the hearse.

2. That it was not negligence in him to remove it to the barn without no-
tifying *C*, as he had no knowledge that it was insured.
3. That it was the duty of *C* to inform him of the insurance, and not of
*B* to inquire of him whether there was any.

[Argued October 29th, 1891—decided February 29th, 1892.]

ACTION to recover upon an account; brought to the Court
of Common Pleas of Fairfield County. The defendants
pleaded a set-off and counter-claim, and the whole question
in the case arose thereon. The case was tried to the court
before *Perry*, *J.*, the facts found, and judgment rendered
for the defendants. The plaintiff appealed. The case is
fully stated in the opinion.

*J. E. Walsh*, for the appellant.

1. There was no agreement that the hearse which the
plaintiff stored should be kept at the plaintiff's livery sta-
ble. A mere expectation of the parties that it would be
kept there does not amount to an agreement. Loose expres-
sions of purpose and intention do not constitute a contract.
3 Wait's Actions & Defences, 580; *Jenkins* v. *Long*, 8 Md.,
132.

2. In the absence of any such agreement the plaintiff had
a right to store the hearse in any proper place, so long as it
was an equally safe one. The only question would be
whether he had been guilty of negligence. Having no
knowledge of the insurance of the hearse, he cannot be
regarded as negligent in not notifying the defendants of his
intention to store it elsewhere. A livery stable keeper tak-
ing care of horses and carriages for hire is bound to take only
reasonable care of them. *Searle* v. *Laverick*, L. R., 9 Q. B.,
122. This is the rule as to all bailees for custody. *Platt* v.
*Hibbard*, 7 Cow., 497; *Knapp* v. *Curtis*, 9 Wend., 60; *Arent*
v. *Squire*, 1 Daly, 347; *Jones* v. *Mugan*, 90 N. York, 4. If
in the course of his exercise of ordinary diligence the prop-
erty perishes without his fault, he will be free from all lia-
bility. Schouler on Bailments, 144; *Francis* v. *Dubuque &
Sioux City R. R. Co.*, 25 Iowa, 60; *Cowles* v. *Pointer*, 26
Miss., 253; *Schmidt* v. *Blood*, 9 Wend., 268; *Hyland* v. *Paul*,

33 Barb., 241; *Petty* v. *Overall,* 42 Ala., 145; *Halyard* v. *Dechelman,* 29 Mo., 459; *Garside* v. *Trent & Mersey Nav. Co.,* 4 T. R., 581.

3. The defendants have set up in their counter-claim only an agreement of the plaintiff to store the hearse at his livery stable and his breach of this agreement. This agreement not being proved, they cannot now make the question of the plaintiff's negligence in his care of the hearse.

*H. B. Scott,* for the appellees.

1. We claim that the contract between the parties was that the hearse should be stored at the plaintiff's livery stable. It is true that the court has found that the place of storage was not *expressly* agreed to by the appellant, but the whole of an agreement is not necessarily stated in words, but may be gathered as well from "the condition and situation of the parties and other collateral facts known to them both." *Lines* v. *Flagg,* 4 Conn., 581; *Strong* v. *Benedict,* 5 id., 224; *Brown* v. *Slater,* 16 id., 196; *Collins* v. *Driscoll,* 34 id., 47; *Cook* v. *Johnson,* 47 id., 175. The great object is to arrive at the mutual understanding of the parties, and this understanding, so far as it failed of explicitness, is to be explained by the attendant facts and circumstances. Schouler on Bailments, § 35; *Vincent* v. *Rather,* 31 Texas, 77. When the parties agreed that the appellant should "*store*" the hearse, what did they understand by the term? Or rather, (according to a well established rule of construction where the parties understand a provision differently,) what should they have understood by the term? *Elting* v. *Sturtevant,* 41 Conn., 182; *Hatch* v. *Douglass,* 48 id., 129; *Hoffman* v. *Ætna Ins. Co.,* 32 N. York, 412; *Gunnison* v. *Bancroft,* 11 Verm., 490; Schouler on Bailments, §§ 37, 51, 91. We submit that the parties must have understood, when the contract was made, that the hearse should be kept at the stable. It is expressly found that the bailors so understood it; the bailee had "*no other* place of storage in mind" when the bargain was made, and as he then "expected to keep" the hearse in the stable, and must therefore have had *that*

place in mind, it is difficult to believe that he did not under-
stand the bargain as the bailors did. But if the court con-
siders the fair import of the finding to be that the bailee did
not understand that he was obliged to store the hearse at
the stable, we turn to inquire what he ought reasonably
to have expected that the bailors would understand by the
language used. There are several considerations which
should have weight in deciding this question.—1st. The
bailee was engaged in a business to which such a bailment
would naturally pertain ; he must have known that it was
because he kept a *livery stable* that the bailors were negoti-
ating with him ; in the absence of any suggestion to the
contrary, a livery stable keeper would naturally be expected
to store and care for a vehicle *at his stable ;* so naturally
indeed that, without the place of storage being *expressly*
agreed upon, the bailors at once took the hearse to the
stable, and the bailee there received it, neither having any
thought of any other place of storage.—2d. The character
of the agreement and the object of the bailors naturally
pointed to the conclusion that they would understand that
the hearse was to be kept at the stable. It will be noticed
that the bailee not only agreed to " store " the hearse, but
also to " care " for it, and " to furnish horses and a driver
for it when required in the appellees' business." Must it
not have been understood that it would be stored at the
stable where were stationed the men who would " care " for
it and the horses and drivers that would be needed for its
use. *Currier* v. *Currier*, 2 N. Hamp., 75 ; *Chase* v. *Fland-
ers*, id., 417 ; *Miles* v. *Roberts*, 34 id., 254. As the bailors
were undertakers and were using a hearse almost every day
in their business, it was fair to expect that their understand-
ing would be that the storage should be at the convenient
and accessible stable.—3d. The nature of the thing bailed
should have warned the bailee that the bailors would expect
that it was to be kept at the stable. It is found that the
appellant knew that hearses were " often, if not usually,
insured, and that to change its place of storage would vitiate
the insurance if any existed." He knew, therefore, that it

was quite probable that this hearse was insured, and he knew that in that case the *place* of its storage became of great importance; if it was insured the bailors were contracting, as they thought he must have known, for storage not in *any* reasonably safe and convenient place, but in *some* óne *place*, and if in *any* one place, where else than at his usual and ordinary place of business. We claim therefore that the contract interpreted in the light of the circumstances under which it was made required the bailee to store the hearse at the livery stable.

2. The bailee "for his own convenience" and without authority departed from the terms of his bailment, and therefore is liable for any damages to the bailors which would not have otherwise occurred. This liability rests not upon negligence, but upon breach of contract. He who has kept his contract cannot be liable for a loss against which reasonable diligence has not formed a sufficient protection, but he who has chosen to use another's property in a way unauthorized by the owner, takes upon himself all risks to the property while in such use. To this strict rule of liability against the delinquent bailee there are but two exceptions :—(1) Where the damage would have occurred had the bailee adhered to the terms of his bailment.—(2) Where slight variations from the contract have been made under circumstances not admitting of prior consultation with the bailor. It is plain that the case at bar comes within neither exception. *Lilley* v. *Doubleday*, 7 Q. B. Div., 510; *Lane* v. *Cameron*, 38 Wis., 603; *Martin* v. *Cuthbertson*, 64 N. Car. 328; *Michaels* v. *N. York Central R. R. Co.*, 30 N. York, 564; *Williams* v. *Grant*, 1 Conn., 487; *Crosby* v. *Fitch*, 12 id., 410; Schouler on Bailments, §§ 35, 101, 106, 139, 140, 141; 3 Sutherland on Damages, 5.

3. If we are right in the foregoing positions, the question of negligence does not arise in this case; the liability of the appellant arises from his unauthorized departure from his contract of bailment. But if this court should not interpret the contract of storage to mean storage at the stable, it would nevertheless seem to be necessarily a part of the

contract of bailment that the bailee should so conduct himself in regard to the thing bailed as not to expose the bailors to an increased risk for his sole convenience. What use of the thing bailed would be unauthorized in this sense must depend on a variety of circumstances. In this case, on account of the nature of the thing bailed, and the custom of insurance known to the bailee, the trial judge has found that the hearse should not have been removed without notice to us, and that the appellant in so removing it violated his duty as a bailee. A reasonable regard for the rights of the bailors required him, before *changing* the place of storage, to ascertain whether or not they would be prejudiced by the change. In the case at bar there were special reasons why this duty should have been required of the bailee. Before removing his own vehicles he sought a permit, and with the special knowledge which he possessed of the custom of insuring vehicles, it would seem to be very slight diligence to require, that the bailee should make some inquiry before risking the property of the owner for the convenience of himself. It is no answer to say that we should have notified the bailee of the insurance; the finding shows that the appellees knew nothing of the barn and *understood that the contract was for storage at the stable*, and therefore had no reason to mention the insurance. If the simple precaution of inquiry had been taken, the bailors would undoubtedly have either refused permission to make the change or have obtained permission from the insurance company as they did in case of other property. The appellant objects that negligence was not in issue, and that the judgment being based upon a fact not in issue cannot be supported. It would be a sufficient answer to say that the appellant himself, in the first three claims of law made in his argument before the trial judge, as appears by the record, expressly raised the question and placed the case on the ground of negligence. A claim not made in the court below cannot be considered in this court, and much less would it be allowable to permit a claim to be made here which was, by strong implication at least, antagonized in the court be-

Bradley *v.* Cunningham.

low. If however the judge had based his finding upon some negligence of which the pleadings gave no notice to the appellant, (such as negligence in protection of the barn from fire,) the question might be a different one, but the judge considered that upon all the facts it was the duty of the bailee not to remove the hearse without informing the owners of his intention to do so. That he did so remove it was not denied, and the circumstances under which he removed it were all received in evidence without objection; the appellant was fairly insisting upon a decision as to whether it was negligence to remove the hearse. Under these circumstances, he cannot complain because the judge called his conduct negligent. If the law upon the facts proved required him to notify us before removing the hearse, he is liable, and is liable upon his contract as bailee.

Seymour, J. The defendants, by way of answer, set-off, and counter-claim to an action brought against them, allege that they were the owners of a hearse, worth three hundred dollars, which was consumed by fire while stored in the plaintiff's barn, on Fairview Avenue in Danbury; that when burned it was insured to its full value in a responsible company, by the terms of whose policy it was only covered by such insurance while it was contained in the plaintiff's livery stable on Main street in Danbury; that prior to the procurement of the insurance the hearse had been left and stored at said livery stable under an agreement by which the plaintiff bound himself to store the hearse at said place; that nevertheless, after the policy had been issued, the plaintiff, without the knowlege of the defendants, or of the insurance company, removed the hearse from the Main street stable to the barn on Fairview Avenue where it was burned; that thereupon the insurance company refused to pay the insurance because the hearse was not in the livery stable on Main street at the time of the fire, and that the defendants lost their insurance and their hearse because of the plaintiff's removal thereof. The defendants offer to set off so much of their claim, arising out of the facts stated in their counter-

claim, as will equal the plaintiff's claim, and ask for judgment against him for the balance.

The plaintiff, in reply, admits that the defendants were the owners of the hearse, and that it was consumed by fire while stored in the plaintiff's barn on Fairview Avenue, as alleged by the defendants. All the other allegations of the answer he denies.

The court rendered judgment for the defendants to recover the difference between the value of the hearse and the amount of the plaintiff's bill of particulars, and made the following finding of facts:—

On September 17th, 1888, the plaintiff was the owner and manager of a livery stable in Danbury, situated on the westerly side of Main street. He resided on Fairview Avenue, nearly if not quite half a mile distant from his livery stable, and at his place of residence had a barn. For his own convenience he sometimes moved his patrons' vehicles from his livery stable to this barn. He also kept horses there for sale, and occasionally would let a horse from there on hire. He used the barn, in short, as he found it necessary, from time to time, to relieve temporary exigencies at his livery stable.

At the date above mentioned the defendants, who are undertakers, entered into an agreement with the plaintiff to store and care for the hearse referred to in the answer, and to furnish horses and a driver for it when required in their business. It was thereupon taken to and received at his aforesaid livery stable. The defendants did not know that the plaintiff ever kept any of his patrons' vehicles at his barn on Fairview Avenue, or anything about the barn or its use at all. The plaintiff moved the hearse in question to his barn three or four months after it was left with him and thereafter kept it there.

The defendant Foran knew, or, from what was said in his presence, might have known, that once when wanted by them the hearse was at this barn, but the court did not find that either of the defendants knew it was being kept there, and Foran, at the time in question, did not give the matter

sufficient consideration to arrive at any conclusion either of approval or disapproval concerning it.

The defendants, at the time of the agreement for care and storage, expected that the hearse would be kept in the Main street livery stable, and the contract, as they understood it, was for storage at that place. The plaintiff also expected to keep the hearse there, but did not expressly agree to. No other place of storage than the Main street stable was actually in the minds of any of the parties when the bargain was made.

The hearse was insured as stated in the answer. Of this the plaintiff had no actual notice, but he knew that such vehicles were often if not usually insured, and that to change its place of storage would vitiate the insurance if any existed. His own vehicles were insured and he caused permission for their removal from one place to the other to be inserted in the policies covering them. He took no pains to ascertain whether the hearse was insured or not.

The court found that in removing the hearse from his livery stable to his barn without informing the defendants of his intention so to do, that they might keep their insurance in force, if any existed, the plaintiff was guilty of negligence.

The hearse was worth $300. On June 27th, 1889, the plaintiff's barn on Fairview Avenue, with its contents, including the hearse in question, was consumed by fire. No proof of loss or formal claim was ever presented to the insurance company by the defendants, because the company declined in advance to entertain any demands under its policy for the loss of the hearse, on the ground that when burned it was not in the place in which it was insured, and the defendants believed that this would be a perfect defense to any claim by them under their policy.

In the argument in this court the appellant contended that the answer, set-off and counter-claim were based upon a claimed agreement by which the plaintiff bound himself to store the hearse in the Main street livery stable, which agreement he had broken, and thereby had occasioned the loss complained of; that the court had found that there was

no express contract to that effect between the parties, and therefore found that the plaintiff was guilty of negligence in removing the hearse from the livery stable without informing the defendants of his intention so to do, that they might keep their insurance in force. In this, it was insisted, the court erred; that no* question of negligence was presented upon the pleadings, but only the question whether the plaintiff had made the contract and had broken it to the damage of the defendants.

We think, with the plaintiff, that no other question was properly presented by the pleadings. But we are also constrained to think that the point was not raised in the court below and therefore cannot be considered here.

There is no suggestion in the finding that any such claim was made at the trial. On the contrary the finding states that the plaintiff claimed, as matter of law, that the contract made by the parties was one of bailment for hire, and that the plaintiff could be held responsible only for lack of ordinary care in the storage of the vehicle; and that, in the absence of an express contract to the effect that the hearse was to be kept at the stable on Main street and nowhere else, the defendants could not recover, unless it appeared that the plaintiff was guilty of negligence or lack of ordinary care in caring for and storing the hearse. The court below was, in effect, invited to pass upon the question of negligence, which it is now claimed is not in the case. The claims made by the defendants, however, in the trial call upon us to decide whether the court erred in holding that in removing the hearse from his livery stable to his barn, without informing the defendants of his intention so to do, that they might keep their insurance in force, the plaintiff was guilty of negligence. This is a case where the question of negligence is presented as a question of law. It respects the duty of the plaintiff under given circumstances. Upon the facts of the case did the court impose the proper rule of conduct?

Had the question been what was the plaintiff's conduct, and the court, upon a correct rule as to what the law re-

quired it to be, had found it to have been negligent, the finding would have been conclusive. But here, the facts being stated, the court held that the law imposed upon the plaintiff the obligation not to remove the hearse from his livery stable to his barn without informing the defendants of his intention so to do, that they might keep their insurance in force, if any existed. Is such the law? As we have seen, the counter-claim is based in terms upon the agreement of the plaintiff to store the hearse in the Main street stable. Had such an agreement been proved the defendants would have been entitled to recover upon the facts found. In *Lilley* v. *Doubleday*, L. R., 7 Q. B. Division, 510, the defendant contracted to warehouse certain goods at a particular place, but he warehoused a part of them at another place, where, without negligence on his part, they were destroyed. The plaintiff had insured the goods, giving the place where the defendant contracted to warehouse them as the place where they were deposited, and in consequence lost the benefit of the insurance. In an action to recover as damages the value of the goods, it was held that the damages were not too remote, and that the defendant by his breach of contract had rendered himself liable for the loss of the goods.

In the opinions which were filed, GROVE, J., says, among other things: "I think the plaintiff is entitled to recover. It seems to me impossible to get over this point, that by the finding of the jury there has been a breach of contract. The defendant was intrusted with the goods for a particular purpose and to keep them in a particular place. He took them to another, and must be responsible for what took place there. * * * I do not give any opinion whether what was done here amounted to a conversion, but I base my judgment on the fact that the defendant broke his contract by dealing with the subject matter in a manner different from that in which he contracted to deal with it." LINDLEY, J., says:—"It is further said that the defendant was responsible only for want of reasonable care, but is that so when he has departed from his authority in dealing with the goods?"

Bradley v. Cunningham.

That case is an authority for the rule it lays down, and seems to at least intimate that, but for the contract, it would not necessarily be want of reasonable care to have warehoused the goods in some other place than where they were first deposited.

There are other cases of a similar import. It is stated in Schouler's Bailments & Carriers, § 106, that a warehouseman who contracts to store goods at a particular place and then stores them somewhere else without his customer's knowledge, whereby the benefit of insurance is lost, is answerable if the goods are destroyed by fire. But the implication all along seems to be that, where there is no contract, the question is the usual one as to ordinary care, and that it cannot be laid down as a rule of law that when goods are deposited with a bailee for hire, without any contract as to where they shall be kept, but, the bailor supposing they will be kept where first deposited, insures them as located there, without informing the bailee of such insurance, the bailee is guilty of such negligence, in removing them to another place of deposit without informing the bailor of his intention of so doing, as will, of itself, make him liable for the value of the goods if burned, and the bailor loses the benefit of the insurance because it only covered the goods while in the place named in the policy.

· The proper rule, in the absence of special modifying stipulations, is that the bailee for hire is bound to exercise that ordinary care and diligence over the property bailed which prudent persons are accustomed to exercise towards like property or in the management of their own property under like circumstances,—that degree of care which may reasonably be expected from a person in the bailee's situation.

The negligence which the court, as matter of law, imputes to the plaintiff in the case, is in removing the hearse without informing the defendants of his intention so to do, that they might keep their insurance, if any, in force.

There was no claim that the barn to which it was removed was more exposed to fire, or that the chances of loss or damage were increased by the removal, or that the plaintiff

knew that the hearse was insured. Had the plaintiff known that the hearse was insured, and that the insurance covered it only while stored in the Main street stable, a different question would have been presented.

The defendants assume that it was the duty of the plaintiff to have ascertained whether the hearse was insured, and whether its insurance would be affected by its change of location. This seems to us a transposition of the relative duties of the parties. The defendants should have acquainted the plaintiff with so important a fact if they expected to have it affect the latter's duty. As is suggested in the note to page fifteen of 5 Am. & Eng. Encyclopedia of Law, parties to contracts are not supposed to know more of one another's affairs than may be communicated to them, nor to consider existing or contemplated transactions with other persons unless they are made known to them.

We think the court erred in its construction of the law, and that judgment should have been for the plaintiff for the full amount of his bill, instead of for the defendants to recover the difference between the value of the hearse and the amount of the plaintiff's bill of particulars.

There is error in the judgment appealed from, and it is reversed.

In this opinion the other judges concurred.