ROBERT L. BUTLER v. LYNN M. GREENE.

FILED OCTOBER 6, 1896. No. 6837.

1. **Pledges:** LIABILITY OF BAILEE. The pledgee of chattels to secure the payment of a debt is a bailee and not the owner of the property, and he is responsible as bailee after as well as before the maturity of the debt.

2. **Review:** INSTRUCTIONS: HARMLESS ERROR. A defendant against whom judgment has been rendered cannot complain because the court instructed the jury to deduct from the damages recoverable by plaintiff the amount of a set-off not pleaded by defendant.

3. **Bailment.** A special contract of bailment prevails in determining the liabilities of the parties, as against general principles of law applicable in the absence of express agreement.

4. **Pledges:** LIABILITY OF BAILEE. A bailee who contracts to keep the property in a particular place is not discharged from damages resulting from his failure to do so because he was compelled to remove it by the owner of the place designated.

5. **Arbitration and Award.** A party to an arbitration may revoke the submission before an award is made, and where the submission provides for a written award, a revocation may be made after the arbitrators have individually communicated to strangers their respective views, but before they have signed any award.

ERROR from the district court of Nemaha county. Tried below before BUSH, J.

*J. S. Stull* and *Davidson & Giffen,* for plaintiff in error.

*G. W. Cornell, contra.*

IRVINE, C.

The principles applicable to this case are simple, although its investigation has been somewhat difficult because of the immense mass of wholly irrelevant testimony which was introduced without objection, and which, under section 309 of the Code of Civil Procedure, should never have been made a part of the bill of exceptions. The action was by Greene against Butler to recover the value of a watch and chain which had been

pledged by Greene to Butler for the payment of a debt, and which, it was alleged, had been lost through the negligence of Butler. From a verdict and judgment in favor of Greene, Butler prosecutes error. We take up the assignments referred to in the brief in the order in which they are discussed.

The first question discussed seems to refer to the assignment that the verdict is not sustained by the evidence. The undisputed facts are that Greene borrowed $30 from Butler and pledged his watch and chain as security for the debt. Butler placed the watch in the safe and vault of the Bank of Johnson, where it remained for some weeks. The officers of the bank then insisted upon its removal, when Butler removed it and carried it on his person for some time and then placed it in a pocket of a summer suit which he deposited at the bottom of a trunk in a room which he and another occupied as a bedroom. Both occupants of the room were bachelors and usually absent during the day. The watch and chain were stolen from the trunk. There is evidence tending to show that one door of the room was not kept locked. It also appears that the room was frequented by a number of Butler's acquaintances. An attempt was made to show that it was used as a resort for gamblers; but the most that can be said of the testimony in this respect is that Butler and his friends at times resorted to the room for the purpose of playing cards for small stakes. Enough does appear, however, to indicate that a number of persons at times had access to the room, and Butler himself testifies that while he kept the watch there he looked for it every day, because, as he says, there were suspicious characters about, and one of the persons whom he deemed suspicious was his room-mate. The case was submitted to the jury on the theory that Butler was required to use ordinary care in keeping the watch, and we think there is enough in the evidence to sustain a finding that it was lost through his failure to exercise such ordinary care.

A great point was made, both in the introduction of evidence and in the argument here, on the terms of the loan, as to time. The contention of Butler is that the loan was made for thirty days and the watch was not stolen until it had been in his possession some four months, payment not in the meantime having been made or tendered. It is claimed that there is no evidence suffi- cient to overcome that offered by defendant in regard to the time for which the loan ran. We do not think this question at all material. It cannot be, and is not con- tended, that Butler became the owner of the watch on the maturity of the loan. Whether or not the loan was over- due, he was still the bailee of the watch and required to exercise such care as a person of reasonable prudence would exercise under the circumstances.

It is next contended that there was error in assessing the amount of recovery. The value of the watch and chain, as fixed by the evidence, was at least $150. The verdict was for $120.54. It is argued that the defendant did not claim a set-off for his debt and that the verdict therefore discloses that the jury was not governed by the evidence. The court, in stating the measure of damages, instructed the jury if they found for the plaintiff, to de- duct the indebtedness from the value of the watch. This was evidently done by the jury. It is true no set-off was pleaded, and under the rule in *Kitchen Hotel Co. v. Ham- mond*, 30 Neb., 618, the instruction was erroneous. It submitted to the jury a consideration of a set-off not pleaded. But the defendant cannot complain. The ver- dict was, by this instruction, made less than the plaintiff was entitled to recover in case the jury found in his favor under the pleadings in the case. The defendant was in nowise prejudiced.

It is also claimed that the court gave undue promi- nence to the plaintiff's case by instructing the jury par- ticularly as to what it should consider in returning a ver- dict for the plaintiff, by way of ascertaining damages, without making a corresponding statement in case the

finding was for the defendant. This assignment is entirely without merit. It is the duty of the court to instruct as to the measure of damages, and where no set-off or counter-claim is pleaded this must refer to the contingency of a finding for the plaintiff.

The fifth instruction is complained of. By this the court stated to the jury "that a pledge of personal property passes to the pledgee merely the possession with a right of retainer until the debt is paid for which the article pledged is given as security; and it is the duty of the pledgee to safely keep the property pledged without using it unless such use is necessary to its preservation." It would have been better had this instruction not been given—the others fully covered the case; but we do not think that there was any prejudicial error in giving it. Standing alone, it would be erroneous as implying that the pledgee was an insurer of the property. But over and over again in the other instructions the jury was told that the defendant was only liable for a failure to exercise ordinary care, and we do not think that it was possible that the words "safely keep" in this instruction could have so overcome the idea so often expressed in the other instructions as to convey any notion that the defendant was liable except for a failure to use ordinary care. Another complaint made of this instruction is that it tells the jury that it is the duty of the pledgee to keep the property without using it unless its preservation requires such use. It is true there is no direct evidence that the loss of the watch was due to defendant's carrying it on his person; but it is undoubtedly true as a general principle that a pledgee has no right to use the pledged property unless the character of the property is such as to render its use necessary for its preservation. There is testimony in the case, as we have said, showing that for some time Butler carried the watch on his person, and while it was not lost while so carrying it, the display made of the watch, and it may be here remarked that the defendant took great pains to show that he had

carried it publicly, may have induced its theft. The proof was that Butler's contract was to keep the watch in the vault of the bank, and he having contracted to do so, and instead thereof having carried it publicly on his person, and thereafter left it within the reach of thieves, we do not think that there was any prejudicial error in this portion of the instruction.

Complaint is also made of the sixth instruction, whereby the jury was told that if there was an express contract to keep the watch and chain in the vault of the bank until the debt was paid, the defendant was bound to keep within the terms of his agreement. In connection with this, complaint is also made of the fourteenth instruction, whereby, among other things, it was said that if the defendant took the watch and chain out of the vault of the bank because the cashier told him to do so, and thereafter put it in an unsafe place and did not take such care as an ordinarily prudent person usually takes of his own goods, and by reason of such want of care the property was stolen, then the verdict should be for the plaintiff. We cannot conceive how the defendant was prejudiced by these two instructions, which properly go together. If the defendant contracted to keep the watch in the vault of the bank, and if it was lost by reason of his failure to do so, he was liable without regard to the general principles of the law of bailment. He had made a contract and he was liable for all damages resulting from his failure to perform it. If he had no right to keep the watch in the vault, that was his affair and not the bailor's. The contract was not to keep the watch in the vault if the bank permitted it, but it was absolute; and it was the pledgee's business to see that he had authority to keep it there. If he had not, he should not have made the contract. But the instructions of the court relieved him from this liability, and, taken together, were to the effect that although he broke his contract in this regard he was still not liable unless he failed to exercise ordinary care. This was more favorable to the defendant than the law warranted.

It is pleaded as a defense that the matter in controversy had been submitted to arbitration and an award had been made whereby the defendant had been discharged from liability. The reply in this respect admitted that there had been a submission, but pleaded that it had been revoked before any award was made. The court instructed the jury that the evidence failed to establish an award and that all evidence on that issue should be disregarded. It is complained that this instruction was erroneous, because it did not confine the question to the single issue presented as to the revocation of the award. We think, however, that on the uncontradicted evidence the court was justified in granting this peremptory instruction. It appears that there was a submission to three arbitrators; that they took testimony and separated. There was thereafter no consultation with all three present, but by desultory conversations among them it was ascertained that two arbitrators favored the defendant and one the plaintiff. Some time thereafter a written award was made, two arbitrators signing a finding for the defendant and the third expressing his dissent and finding for the plaintiff. All witnesses, however, agreed that before the award was signed the plaintiff revoked the submission and served notice of the revocation on the defendant and on each arbitrator. The written agreement for a submission provided for a written award. It is elementary law that a submission may be revoked before the award, and it is also elementary that there is no award as long as the matter rests in the breasts of the arbitrators. It is true that there is evidence tending to show that after the arbitrators had ascertained their mutual opinions no secret was made thereof and their individual views were disclosed to inquirers. It is not shown, however, that they had been communicated to Greene, except that one arbitrator had told him that the award would be against him and that he wanted to present authorities to one of the other arbitrators. There is no evidence which would jus-

tify a finding that the three arbitrators had formally concluded their efforts and had made any announcement of their conclusion. It was just as if jurymen, after being permitted to separate, had made known their individual views. Under the agreement the award was to be written. The revocation was prior to the written award, and it was also prior to any definite and conclusively expressed decision of the arbitrators. The plaintiff was not bound by it.

JUDGMENT AFFIRMED.