INTERSTATE COMPRESS CO. v. AGNEW.*

(Circuit Court of Appeals, Eighth Circuit. January 15, 1919.)

No. 5012.

1. BAILMENT ⬤⟿14(1)—BAILEE FOR HIRE—MEASURE OF LIABILITY.
    A bailee for hire is only bound to use ordinary diligence in the care of the property bailed, and in the absence of a statute prohibiting it, may limit his liability by contract, except for gross negligence, willful act, or fraud.

2. COURTS ⬤⟿372(4)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
    A decision by the highest court of a state, not based on any statute, that a contract is void as against the public policy of the state, is not binding on a federal court in a case involving a similar contract, made before such decision was rendered, and where the contract is valid under the settled law of the national courts.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by J. W. Agnew against the Interstate Compress Company. Judgment for plaintiff, and defendant brings error. Reversed.

James R. Keaton, of Oklahoma City, Okl. (Frank Wells and David I. Johnston, both of Oklahoma City, Okl., on the brief), for plaintiff in error.

Everett Petry, of Tulsa, Okl., for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER, District Judge.

TRIEBER, District Judge. The defendant in error, hereinafter referred to as the plaintiff, instituted this action against the plaintiff in error, hereinafter referred to as the Compress Company, to recover the value of 294 bales of cotton stored with the Compress Company, alleged to have been destroyed by fire by reason of the gross negligence of the Compress Company.

The answer admits the destruction of the cotton while stored in its compress, but denies all allegations of negligence. As a further defense it pleads that, when the cotton was delivered to it, it executed and delivered to the party delivering it a receipt which provided:

"Not responsible for loss by damage, fire, flood, or other agencies, unless caused by the willful act or gross negligence of this company"

—which receipt was accepted by the bailor, and that no part of the cotton was destroyed by its willful act or gross negligence. These receipts were issued and delivered in January, 1915. There was a trial

to a jury, and a verdict for the plaintiff. The Compress Company requested the court, among other special requests, to charge the jury:

"The court instructs the jury that the following provisions contained in each of the receipts issued by the defendant to the plaintiff, or his grantors, for each of the bales of cotton delivered by plaintiff to defendant, and in the latter's possession at the time of the fire, to wit: 'Not responsible for loss by damage, fire, flood, or other agencies, unless caused by the willful act or gross negligence of this company'—constitutes a part of the contract of bailment, and is a valid and binding provision thereof, and before plaintiff will be entitled to recover in this case he must show to your satisfaction by a preponderance of the evidence that defendant's agents or employés were guilty of some act or omission contributing to the destruction of plaintiff's cotton by the fire in question, which was willfully performed or omitted, or which amounts to gross negligence or fraud."

"You are instructed that the defendant in this case, in any event, was only bound to use ordinary care in providing a reasonably safe place for the storage of the cotton, and was bound only to take such precautions and adopt such safeguards as an ordinarily prudent person would adopt to protect his own property."

"The court instructs the jury that one who undertakes to care for or to provide custody for goods for hire has a legal right to limit his liability by special contract, so as to cover only such damage as may be caused by the willful or gross negligence of the party in caring for said property or providing storage therefor."

"The court instructs the jury that a custodian for hire, who has limited the liability thereunder to only such damages as may be caused by the willful or gross negligence of such person, can only be held liable for such damage as naturally resulted from the willful act of such person in caring for said property or for such damage as has resulted from the gross negligence of such person in taking care of said property while in his possession"

—all of which requests were by the court refused and proper exceptions saved.

The court in its charge instructed the jury on this issue:

"A proposition which may well be disposed of at the outset is that the provision in the tickets for this cotton against responsibility, unless caused by the willful act or gross negligence of the company is not valid, because contrary to the public policy of this state. The principle which applies in a case of this kind and which governs in this case is that the defendant, being a bailee for hire of plaintiff's cotton, would become answerable in damages to the plaintiff in case of the loss of the cotton, through its negligence proximately causing such loss, but not otherwise."

To this part of the charge a proper exception was saved by the Compress Company.

[1] The issues are therefore narrowed to the single proposition of law, whether the provision contained in the receipts and accepted by the plaintiff, that the Compress Company is not responsible for loss or damage by fire, flood, or other agencies, unless caused by the willful act or gross negligence of the defendant, is valid. In Clark v. United States, 95 U. S. 539, 542 (24 L. Ed. 518), it was held:

"A bailee for hire is only responsible for ordinary diligence and liable for ordinary negligence in the care of the property bailed. This is not only the common law, but the general law, on the subject."

It is equally well settled that a bailee, in the absence of a statute prohibiting it, may limit his liability by contract, except for gross negligence, willful act, or fraud. World's Columbian Exposition v. Re-

public of France, 96 Fed. 687, 694, 38 C. C. A. 483; Gashweiler v. Wabash, etc., R. R., 83 Mo. 112, 53 Am. Rep. 558; Butler v. Greene, 49 Neb. 280, 68 N. W. 496; Sanchez v. Blumberg (Tex. Civ. App.) 176 S. W. 904; Evans v. Nail, 1 Ga. App. 42, 57 S. E. 1020; Direct Nav. Co. v. Davidson, 32 Tex. Civ. App. 492, 74 S. W. 790; Memphis & Charleston R. R. Co. v. Jones, 39 Tenn. (2 Head) 517; 4 Elliott on Contracts, § 3002; 6 Corp. Juris, p. 1112. In the World's Columbian Exposition Case it was held:

"Is there good reason why the notice given by the Exposition Company to exhibitors, that it would 'in no way be responsible for damages or loss of any kind, * * * however originating,' should not be given full effect according to its terms? We perceive none."

[2] The learned trial judge considered himself concluded by the decision of the Supreme Court of Oklahoma in Inland Compress Co. v. Simmons, 159 Pac. 262, where the court said:

"The writers on bailments seem to agree that the parties to a bailment contract may regulate the responsibilities of the bailee by special contract."

But he further held that a contract by a compress company, identical with that in the instant case, "is against the public policy of the state and therefore void." This opinion was filed July 11, 1916. It will be noticed that the decision in that case is not based on any statute of the state, but on a general proposition of law, declaring for the first time in the judicial history of the state that such a contract is against the public policy of the state. The only statute of the state cited in the opinion is section 1109 of the Revised Statutes of 1910, which provides:

"A bailee for hire must use at least ordinary care for the preservation of the thing bailed"

—which is merely declaratory of the common law and the general law on the subject, as was held in Clark v. United States, supra. Is that decision, rendered long after the contract involved was made, conclusive on the national courts? When a ruling of the highest court of a state is controlling, when the same question arises in an action pending in a national court of that state, has been determined by the national Supreme Court so frequently, that it has ceased to be an open question. Like most important legal principles, it has been of gradual growth, until it has finally become a well-established rule of law. In Kuhn v. Fairmont Coal Co., 215 U. S. 349, 360, 30 Sup. Ct. 140, 143 (54 L. Ed. 228), the court, after a full review of the former rulings of that court on the subject, epitomizes the law as follows:

"We take it, then, that it is no longer to be questioned that the federal courts in determining cases before them are to be guided by the following rules: (1) When administering state laws and determining rights accruing under those laws, the jurisdiction of the federal court is an independent one, not subordinate to, but co-ordinate and concurrent with, the jurisdiction of the state courts. (2) Where, before the rights of the parties accrued, certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the state, those rules are accepted by the federal court as authoritative declarations of the law of the state. (3) But where the law of the state has not been thus settled, it is not only the

right, but the duty, of the federal court to exercise its own judgment, as it also always does when the case before it depends upon the doctrines of commercial law and general jurisprudence. (4) So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, or when there has been no decision by the state court on the particular question involved, then the federal courts properly claim the right to give effect to their own judgment as to what is the law of the state applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued. But even in such cases, for the sake of comity and to avoid confusion, the federal court should always lean to an agreement with the state court if the question is balanced with doubt."

Applying these rules, giving full weight to that part of the decision in the Kuhn Case that, "for the sake of comity and to avoid confusion, the federal court should always lean to an agreement with the state court, if the question is balanced with doubt," we are of the opinion that the law is well settled that the contract of bailment in the case at bar is valid, and not against public policy, so far as it affects contracts entered into prior to the decision in the Inland Compress Co. Case, and that the court erred in refusing to give the instructions hereinbefore set out, asked by the defendant, and charging the jury "that the limitation of liability in the warehouse receipts was invalid, because contrary to the public policy of the state."

The cause is reversed, with directions to grant a new trial and proceed in conformity with this opinion.