### INTERSTATE COMPRESS CO. v. AGNEW.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1921.)

No. 5634.

1. **Appeal and error** ☞1050 (1) —**Evidence** ☞317 (11) —**Testimony as to analysis of water, held hearsay and prejudicial.**

   In an action for loss of cotton by fire on the ground that defendant was grossly negligent in failing properly to open and flush hydrants to keep them from becoming clogged, testimony of a plumber that the city water contained 106 pounds of mud to the thousand gallons "according to the analysis I had made of it," that he did not make the analysis himself, but had it made by another, was bald hearsay and prejudicial, in the absence of proof as to who made the analysis or his qualifications.

2. **Bailment** ☞31 (3) —**Evidence held insufficient to show gross negligence in providing equipment for putting out fires.**

   In an action against a compress company to recover for cotton lost by fire, evidence *held* insufficient to warrant court in charging the jury that they might return a verdict for the plaintiff if they found that the defendant was guilty of gross negligence in providing equipment to prevent loss by fire.

3. **Trial** ☞139 (1) —**Scintilla of evidence not enough to take case to jury.**

   The rule in the federal courts is that in each case tried by a jury the question of law always arises at the close of the evidence whether or not there is such substantial evidence of the plaintiff's cause of action as will sustain a verdict in his favor and warrant the trial court in refusing in the exercise of its judicial discretion to set a verdict in his favor aside, if rendered, and any evidence, a scintilla of evidence, is not sufficient to warrant such a refusal, and the question of law arises on a request for a peremptory instruction made before the case goes to the jury.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Appeal and error** ⬅⇒997(3)—**Appellate court must review ruling refusing peremptory instruction.**

On request for a peremptory instruction before case goes to the jury, the jurisdiction is conferred and the duty is imposed on the trial court to decide it, and, on exception, on the appellate court to review that decision, and, the jury having no jurisdiction of this issue of law, its verdict after the trial court has decided it does not deprive the appellate court of its jurisdiction, or relieve it of its duty to review its decision by the trial court.

5. **Bailment** ⬅⇒14(1)—**Compress company held only liable for gross negligence for loss occasioned by fire.**

Compress company, keeping cotton on platform under contracts providing that it was "not responsible for loss by damage, fire, flood, or other agencies, unless caused by the willful act or gross negligence of this company," was not liable for loss of cotton by fire for mere negligence, but owner must show gross negligence.

6. **Bailment** ⬅⇒31(3)—**Evidence insufficient to support finding of "gross negligence" of compress company in maintaining system to protect cotton against fire.**

In an action against a compress company to recover for loss of cotton by fire, based on gross negligence only, *held* that there was no substantial evidence that defendant was guilty of gross negligence, in view of Rev. Laws Okl. 1910, §§ 2917, 2919, defining gross negligence as want of slight care or diligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gross Negligence.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by J. W. Agnew against the Interstate Compress Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

James R. Keaton, of Oklahoma City, Okl. (Frank Wells and David I. Johnston, both of Oklahoma City, Okl., on the brief), for plaintiff in error.

Everett Petry, of Tulsa, Okl., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. This is an action by J. W. Agnew to recover of Interstate Compress Company, a corporation, damages which he alleges were inflicted upon him by the gross negligence of the defendant in providing equipment for its compress platform and plant, and in maintaining in efficient condition such equipment to prevent fire, which, on November 16, 1916, destroyed a large part of its plant and 294 bales of the plaintiff's cotton, which was on the defendant's compress platform. The parties stipulated to the effect that if the defendant's gross negligence was the proximate cause of the loss of this cotton the plaintiff would be entitled to recover $17,485.66, and at the close of the trial the jury returned a verdict for the plaintiff for that amount and interest.

At the time of the fire the plaintiff's cotton was held by the defendant as its bailee, on its compress platform, under contracts which pro-

vided that it was "not responsible for loss by damage, fire, flood, or other agencies, unless caused by the willful act or gross negligence of this company." At a former trial the court below held that the defendant could not limit its liability in this way by agreement, but this court was of the opinion that the contract was legal and valid, and a new trial was directed. Interstate Compress Co. v. Agnew, 255 Fed. 508, 168 C. C. A. 199.

The chief complaints of this new trial are: (1) The admission of incompetent evidence; (2) the charge of the court that, if the jury should find that the defendant was guilty of gross negligence in providing the equipment of its compress platform and plant, they might return a verdict for the plaintiff; and (3) that it denied the request of the defendant that it direct the jury to return a verdict in its favor.

The origin of the fire was unknown. It was first discovered by the defendant's night watchman about 6 o'clock in the afternoon. He immediately called his helpers, went to one of defendant's hydrants on the main which led from the water system of the city of Altus the source of the water used by the defendant for protection, attached 100 feet of hose to this hydrant which reached to within about 10 feet of the fire, and turned the water on, but the stream was so weak that it did not reach the fire. If the stream had been such as a pressure of 60 pounds to the square inch ordinarily produced, he could then have ·extinguished the fire. He immediately attached hose to and turned the water on to a second hydrant near the fire, but it produced nothing but air. By this time the fire had so increased that he could not have extinguished it if a hydrant had produced a powerful stream.

[1] It was one of the theories of the plaintiff that the reason why these hydrants failed to produce forcible streams was that the city water used contained much sediment, that this sediment had clogged the hydrants or the mains of the compress company by reason of the gross negligence of the defendant in failing properly to open ? ꞏ1 flush the hydrants. In its endeavor to establish this theory the plaintiff's counsel called a witness to testify that he was a plumber and had lived in Altus 6½ years, that the source of the water supply of that city was surface water which drained into a lake whence the city took its water. After this testimony had been received the plaintiff's counsel asked this witness what the condition of that water was as to mud or ·silt in it. Defendant's counsel objected to the question on the grounds that no proper foundation had been laid ꞏfor an answer to it; that no showing had been made t꜀.꜀t the witness was qualified to make an analysis of the water to deꞇermine the percentage of sediment it contained; that the witness showed that he had the analysis made and did not make it himself; that he did not show that it was made by anybody that was qualified to determine the fact; and that the answer was incompetent and hearsay. The court overruled these objections, the defendant excepted, and the witness answered, "Well, it had 106 pounds ·of mud to the 1,000 gallons, according to the analysis I had made of it." Counsel for the plaintiff, in his argument in ꞏthis court, gives ꞏweight to this answer as he probably did before the jury. The answer

was prejudicial to the defendant, was bald hearsay, clearly incompetent, and its receipt was error.

[2] Another specification of error is that the court charged the jury that they might return a verdict for the plaintiff if they found from the evidence that the defendant was guilty of gross negligence in providing its equipment for preventing loss by fire of cotton on its compress platform and in connecting that equipment with the water system of the city when the fact was that no substantial evidence of such neglect had been introduced. When the court charged the jury, these facts relative to this specification had been established by uncontradicted evidence. At the time of this fire the defendant had a plant, con- sisting of furnaces, boilers, presses, and other machinery for receiving, storing, and compressing cotton, surrounded by several acres of platforms for storing and keeping cotton in the southwestern portion of the city of Altus, and it was engaged in operating this plant and using this platform, on which there were about 9,000 bales of cotton. The city of Altus had provided and used for several years, to protect itself and its citizens from fire and for other purposes, a city water system consisting of a standpipe, pumps, and mains which were connected with a lake that was supplied with water by surface drainage from the higher grounds surrounding it. This system was capable of producing a pressure of 60 pounds to the square inch and of throwing a stream of water, from a 2½-inch nozzle of a hose connected with a 4-inch main, 65 to 75 feet. The mains of the city system in that part of the city in which the defendant's plant and platforms were located were 4 inches in diameter. The platform of the defendant on which the plaintiff's cotton was, was about 4 feet above the ground. To prevent the injury and destruction by fire of its platform, its boilers, engines, and machinery, and the cotton on the platforms, the defendant had installed and was maintaining an elaborate and properly laid and distributed system of water mains, hydrants, hose, and water barrels throughout its platforms, and had connected this system with the water system of Altus by a main of the same diameter, 4 inches, as those of the city water system in the southwestern part of the city. It had provided 18 hydrants, properly distributed throughout the platforms, and had furnished every hydrant with 100 feet of hose with a nozzle 2½ inches in diameter. It had provided 140 barrels distributed throughout the platforms 40 feet apart, filled and kept filled within 6 or 8 inches of their tops with water. It had provided a night watchman, who, at the time of the fire, had just completed his first round and found no fire where it broke out. This watchman was required to patrol the compress platform at night, and record his presence at 15 properly distributed stations once in each 30 minutes. This water system had been previously used to throw water on burning cotton from one of the hydrants for an hour, and had put out that fire. This system of fire protection had repeatedly been inspected and approved by an inspector of the companies insuring the property, and so far as this record discloses no inspector or other person had ever complained or charged, and no witness came at the trial to testify, that this system was not a reasonably adequate equipment to protect the plant, the plat-

form, and the cotton against fire, and our conclusion is that the court fell into error in its charge to the jury that they might find the defendant guilty of gross negligence in providing this equipment to prevent loss by fire and connecting it with the city water system, because there was no substantial evidence in this case to sustain such a finding.

A further complaint of counsel for the defendant is that the court refused to grant its request to instruct the jury to return a verdict in its favor on the ground that there was no substantial evidence in the case that it was guilty of gross negligence, either in providing or in maintaining its equipment to prevent loss of the cotton by fire.

At the close of the trial the court properly charged the jury that there was no other ground than (1) gross negligence in providing the equipment to prevent loss by fire, and (2) gross negligence in maintaining such equipment on which the jury could lawfully find for the plaintiff. Our examination of the record has convinced that there was no substantial evidence to sustain a verdict of gross negligence in providing the equipment, and the only question remaining, presented by the refusal to instruct for the defendant, is Was there any substantial evidence of gross negligence of the defendant in maintaining the equipment in an efficient condition? The evidence on this issue is too voluminous for citation in detail, but the general effect of it may be stated. The plaintiff produced testimony to the effect that when the fire was discovered the two hydrants in the defendant's system first opened produced, one a weak and useless stream of water, and the other none at all, and that when these had been tried it was too late for the watchman to put out the fire, that when the members of the city fire department and the officials and employees of the city arrived the city hydrant near the connection of the city system with the compress system would not produce an efficient stream, but that the reason for this was that several of the hydrants of the compress system were then open, that these officers caused the main connecting the compress system to the city system to be cut and capped and then the city hydrant threw a stream 60 to 75 feet from the nozzle of the hose; that shortly after the fire started the pressure on the city system at the city water plant was 60 pounds to the square inch, and this was ordinarily sufficient to throw an efficient stream from 65 to 75 feet from the nozzle of 100 feet of hose attached to a hydrant; that in their opinion there was no obstruction in the mains of the city; that the water derived from the lake carried sediment; that this sediment settled in dead ends of mains in pipes and in hydrants, and if they were not flushed once in from one to four weeks it sometimes clogged a hydrant or main in the city system so that it required two or three minutes, and in some cases longer, after it was opened to clear the main, pipe, or hydrant and cause it to throw an efficient stream; and that in the opinion of some of the witnesses for the plaintiff the failure of the two hydrants of the compress company to produce forcible streams was because they had not been properly flushed and had become clogged with sediment. The plaintiff, however, produced no witnesses who testified that any of the compress company's hydrants had ever been so clogged, or that the defendant or any of its employees

had ever experienced or been notified of any such clogging before the fire. On the other hand there was substantial evidence that the first hydrant opened after the fire started was on that main which connected the city water system with that of the compress company, that the boilers of the company were in operation on the day of the fire, that 12,000 gallons of water per day were required by them when thus in operation, that this amount of water had been drawn through this main by the engineer of the compress company on that day and used in the boilers and that he had observed nothing unusual in the supply or pressure, but this water was drawn by pumps so that its use in this way would not measure the pressure; that he cleaned the boilers once a week on Sunday; that on the Sunday before the fire he used the compress company's hydrant 20 feet south of the boilers and the hose therewith to clean them and the pressure was as good as usual; that the 140 barrels had been filled at least once in each two weeks before the fire to restore the loss of water by evaporation, that at such fillings all the hydrants were ordinarily used for that purpose and the pressure had always been normal; that the engineer of the compress company had never known one of the hydrants of that company to become clogged or stopped up with mud; and there was no evidence that any one had ever known of the clogging of any of the mains or hydrants of the compress company with mud or sediment so that it did not throw an efficient stream before the fire. In this state of the record it is difficult, if not impossible, to hold that there was any substantial evidence of gross negligence in the defendant's maintenance of the system of protection against fire.

[3, 4] Counsel for the plaintiff invokes the rule adopted by some courts that if there is any evidence, including every reasonable inference the jury could have drawn from the same reasonably tending to support the verdict, the judgment will not be reversed for insufficient evidence, but that rule does not prevail in the federal courts. The rule in these courts is that in each case tried by a jury the question of law always arises at the close of the evidence whether or not there is such substantial evidence of the plaintiff's cause of action as will sustain a verdict in his favor and warrant the trial court in refusing in the exercise of its judicial discretion to set a verdict in his favor aside if rendered, and any evidence, a scintilla of evidence, is not sufficient to warrant such a refusal. This question of law arises on a request for a peremptory instruction made before the case goes to the jury. The jurisdiction is conferred and the duty is imposed upon the trial court to decide it and, on exception, upon the appellate court to review that decision. The jury has no jurisdiction of this issue of law, and its verdict after the trial court has decided it does not deprive the appellate court of its jurisdiction or relieve it of its duty to review its decision by the trial court. So it is that the question here is, was there such substantial evidence of the gross negligence of the defendant in maintaining its system of protection against fire as would justify a court in sustaining a verdict against the defendant?

[5, 6] The defendant was not liable for negligence. It was liable for gross negligence only. Its contract of bailment was an Oklahoma

contract. The statutes of Oklahoma declared that gross negligence consists in the want of slight care or diligence. Oklahoma Revised Laws 1910, §§ 2917, 2919. The court below charged the jury that—

"To fix liability on the defendant gross negligence is necessary, which is more than the want of ordinary care, and it is, as defined by the law, the want of slight care or diligence, that is, such as persons of ordinary care usually exercise about their own affairs of slight importance."

There was no exception to this portion of the charge and, conceding, as counsel for the plaintiff claims, that it was correct, without deciding or intimating any opinion on that question and testing the issue of substantial evidence thereby, a deliberate examination and consideration of the entire record in this case, the evidence of the laborate system of protection against fire which the defendant installed, of the mains, hydrants, water barrels, and of the connection of this system with the city water system; the evidence of the care exercised by the defendant in the maintenance of this system, of the filling of the water barrels, of the opening and use of the hydrants for that purpose, of the provision and use of the watchman, the absence of any evidence by any witness that he had ever known before the fire of the clogging of any main or hydrant of the compress company with sediment so as to render it inefficient, and the positive testimony of the witnesses of the defendant who had been in charge of and using the defendant's fire protection system that they had never experienced or known of such clogging before the fire, have left no doubt that there was no substantial evidence in this trial that the defendant either in providing or maintaining its system of protection of the compress platform and the cotton upon it against fire failed to exercise such slight care or diligence as persons of ordinary care usually exercise over their own affairs of slight importance, and the court below should have instructed the jury to return a verdict for the defendant. Let the judgment below be reversed, and let the case be remanded to the court below for a new trial.