PERTH AMBOY DISTRICT COURT.

HERBERT LUNN, PLAINTIFF, v. CARL T. LEPPER, t/a LEP-
PER'S MOVING AND STORAGE COMPANY, DEFEND-
ANT.

Decided May 1, 1935.

For the plaintiff, *Huyler Romond.*

For the defendant, *David I. Stepacoff.*

GOLDBERGER, D. C. J.   On or about the 24th day of May,
1933, the plaintiff entered into an agreement for the storage of
his furniture with the defendant.   The agreement set forth
that the defendant was a warehouseman and owned and ope-
rated a warehouse at 283 Madison avenue, and that he would
haul the furniture of the said plaintiff to said warehouse and
receive the same into storage to be stored in a room by them-
selves and to be delivered to said owner upon the payment
of the storage charges, &c.   No reservations were made in
the agreement giving the defendant the right to store furni-
ture elsewhere.

From the testimony it appears that the said defendant in
all of his literature set forth that he had a warehouse at
said address and gave no intimation that he had any other
place for storage.   It further appears from the evidence that
the advertised place consisted of a brick building, two stories
in height, occupied by the defendant and was used as a
storage on the second floor, and the ground floor for the sale
of new furniture at retail.   The plaintiff's furniture was
never stored in the place agreed upon, but was taken without
the knowledge of the plaintiff to another warehouse, two

stories in height, of hollow tile construction; the ground floor of which was used as a garage for the trucks of the defendant, and the upper floor for the storage of furniture in wooden coops. There appears to have been no fire protection between the garage part of the building and the upper story. Sometime thereafter, a fire took place and partially destroyed plaintiff's furniture, most of the damage being caused by smoke.

This suit is brought to recover for the loss of several articles unaccounted for after the fire, the value of the other furniture having been adjusted by the plaintiff's insurance company, although the insurance policy covered the plaintiff at the intended place of storage.

It does not appear that the warehouseman was obliged to store the furniture in a place other than agreed upon, and even if it were so, it is undoubtedly the law that where a bailee expressly contracts, as in this case, to keep property in a particular place, he will be liable for his failure to do so, nor could he escape liability by alleging he was not negligent.

The weight of authority appears to support the rule that if the warehouseman bailor), without authority, deviates from the contract as to the place of storage or keeping of the property, and a loss occurs which would not have occurred had the property been stored or kept in the place agreed upon, the bailee is liable even though he is not negligent. *Lilley v. Doubleday,* 7 *Q. B. D.* 510; *Bradley v. Cunningham,* 61 *Conn.* 485; 23 *Atl. Rep.* 932; *McCurdy v. Wallblom Furniture Co.,* 94 *Minn.* 326; 102 *N. W. Rep.* 873; *St. Losky v. Davidson,* 6 *Cal.* 643; *Butler v. Green,* 49 *Neb.* 280; *Scott-Mayer Commission Co. v. Merchants Grocer Co. (Ark.),* 226 *S. W. Rep.* 1060; *Mortimer v. Otto,* 206 *N. Y.* 89; 99 *N. E. Rep.* 189; *Mandell v. McKegney,* 162 *N. Y. Supp.* 920. See 12 *A. L. R.* 1322, where all the cases appear to have been collected.

The rule which regards the bailee as assuming, by his breach of contract the risk of any injury which would not have resulted had he not committed such a breach, even though the place he moves the goods is equally safe and proper for the purpose, seems to be in accord with the general

proposition which is stated in 2 *Cooley Torts* (*3d ed.*) 1332, 1333, as follows:

"Every bailee is bound, in his use of the property, to keep within the terms of the bailment. If he hires a horse to go to one place, but goes with it to another, he is guilty of a conversion of the horse from the moment the departure from the journey agreed upon takes place. It is immaterial that the change is not injurious to the interests of the bailor; it is enough that it is not within the contract. Contracts are matters of agreement, and even a more beneficial contract cannot be substituted for another without the mutual assent upon which all agreements must rest."

The leading case is that of *Lilley* v. *Doubleday, supra,* where a bailee who had contracted to keep goods at a certain place, but who removed them to another place where they were destroyed by fire without his fault, was held liable for their loss to the bailor, who had taken out insurance on the goods as in the place first deposited. The decision is not based especially on the ground of loss of insurance but on the theory that the bailee by the unauthorized removal of the goods, assumed the risk and was liable for any damage that would not have occurred had they been left in the agreed place. It was said (Judge Grove):

"In said case the defendant was entrusted with the goods for a particular purpose and to keep them in a particular place. He took them to another, and must be responsible for what took place there. The only exception I see to this general rule is where the destruction of the goods must take place as inevitable at one place as at the other. If a bailee elects to deal with the property intrusted to him in a way not authorized by the bailor, he takes upon himself the risk of so doing, except where the risk is independent of his acts and inherent in the property itself * * *."

In the Mortimer case (*supra*), as well as in the case under consideration, it was insisted by the warehouseman that the destruction of the goods was caused by the fire, and not by the placing of the goods in a particular warehouse where they were destroyed; in other words the fire was the proximate cause of the destruction of the property and that the

warehouseman was not liable, because the fire did not occur through any lack of reasonable care on his part. In overruling this contention the New York Court of Appeals said:

"The defendants as bailees were obligated to exercise such care in regard to the property as a reasonable careful owner of similar goods would exercise. * * * They by their express agreement subjected themselves to the additional obligation that they would store the goods in a specified place. No degree of care or vigilance, short of complete performance, would relieve them of that obligation. * * * A cause of damages which the parties seek to avoid by their contract cannot be said to be an independent of intervening cause, although there is not between it and the damages the direct relation of cause and effect. The plaintiff in this cause deposited their property with the defendant, and a regard for its safety and security while in the keeping of the defendant was obviously within their contemplation, and it may be justly assumed, known to the defendants. For the purpose of making effective that regard, the parties selected the precise place of storing. Fire is an ordinary and frequent agency of destruction and injury, and safety as against it was in the contemplation of the parties when they agreed that the property should be stored in the specified room. Had the property been there stored, the plaintiff would have assumed all the risks of injury to it except those ordinarily imposed by law upon the defendants as bailees. When, however, the property was burned in the building in which the defendants in fact placed it, the consequent loss and damage was that which the parties apprehended and sought to avoid, through the written agreement that the property should not be there, and the defendant must therefore indemnify the plaintiff."

Judgment will go for the plaintiff.